USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/31/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONNA ITALIA USA, INC.,

                Plaintiff,

        -against-

SMART SODA, INC., et al.,

                Defendants.

24-CV-06779 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Donna Italia USA, Inc. ("Donna Italia" or "Plaintiff") brings this action against Smart Soda Holdings, Inc. ("Smart Soda") and its co-founder and CEO Lior Arie Shafir (collectively, "Defendants"), asserting claims for breach of contract and, in the alternative, breach of the covenant of good faith and fair dealing and unjust enrichment. *See* Dkt. No. 1 ("Complaint" or "Compl."). Plaintiff alleges that Defendant has unlawfully failed to pay Plaintiff sums due pursuant to a settlement agreement (the "Agreement") between Donna Italia and Defendants, entered into on July 16, 2024. Plaintiff has moved for summary judgment on all claims. For the reasons that follow, Plaintiff's motion is GRANTED.

BACKGROUND

I.     **RELEVANT FACTS.**[1]

Plaintiff Donna Italia is a Florida corporation that operates a food, beverage, and related consumer products business. Compl. ¶ 10. Defendant Smart Soda is an Ohio corporation that

---

[1] The following facts are taken from the parties' Rule 56.1 statements of material facts and the responses thereto. *See* Dkt. No. 51-2, Plaintiff's Statement of Undisputed Material Facts ("Pl.'s 56.1"); Dkt. No. 56, Defendants' Counterstatement of Material Facts ("Defs.' 56.1"). The Court refers to the parties' memoranda of law in support of and in opposition to the motion for summary judgment as follows: Plaintiff's memorandum of law supporting their motion for summary judgment (Dkt. No. 52) as

operates a beverage business.  Compl. ¶ 11.  Defendant Lior Arie Shafir is a co-founder and the current CEO of Smart Soda.  Pl.'s 56.1 ¶ 3.

### A.  The December 5, 2023 Loan

On December 5, 2023, Donna Italia provided a $100,000 loan to Smart Soda (the "Loan").  Compl.  ¶ 1.  The term of the Loan was for 120 days, with 5% interest, for a total of $105,000.  *Id*. ¶ 2.  On December 5, 2023, Mr. Shafir executed a personal guarantee of payment on the Loan, including interest (the "Personal Guarantee").  *Id.* ¶ 1; Pl.'s 56.1 ¶ 4; Dkt. No. 50-2 at 1.

On April 3, 2024, 120 days from December 5, 2023, the Loan terminated and the face value of the Loan plus interest became due.  Pl.'s 56.1 ¶ 5.  No payments were ever made on the Loan, by either Smart Soda or Mr. Shafir.  *Id.*  ¶¶ 6, 8.

### B.  The Settlement Agreement

After a series of communications regarding Defendants' non-payment of the Loan, on July 16, 2024, Defendant and Plaintiff collectively entered into a settlement agreement (the "Agreement") memorializing the terms of an installment payment plan to repay the Loan.  *Id.* ¶ 9.  Defendant Shafir admit to executing the Agreement but contends he was coerced "upon threats of losing [the Smart Soda] company."  Defs.' 56.1 ¶ 9.  The only evidence of "coercion" offered is that Mr. Shafir did not otherwise have the means to repay the Loan.  *Id.*; Dkt. No. 58 ¶ 8.  This case arises from Defendants' breach of the Agreement.

When the Agreement was signed, none of the Loan amount (105,000.00) had been paid, and all payment obligations were past due.  Pl.'s 56.1 ¶ 10.  Under the Agreement, the

---

"Mot."; Defendants' memorandum of law in opposition (Dkt. No. 60) as "Opp."; and Plaintiff's reply (Dkt. No. 61) as "Reply."

outstanding Loan amount would accrue an additional 5% interest on the amount of the Loan that remained unpaid for each 120-period thereafter. *Id.* ¶ 11; Dkt. No. 1-1 ("Agr.") at 1. Defendants agreed to pay Donna Italia the total sum of $108,750, to be paid in four installments of $21,187.50 each on July 20, August 15, September 15, and October 15, 2024, in full satisfaction of the Loan. Agr. ¶ 2. Paragraph 2 of the Agreement provided that the payments were to "be made via wire" and included Plaintiff's bank account and routing number to effectuate any wire payment. *Id.*; Pl.'s 56.1 ¶ 14. The Agreement also provided that any payment made within a week of the due date would be deemed "timely." Agr. ¶ 5(b).

If Smart Soda failed to make the payments due, the Agreement states that Donna Italia "has the right to claim the Agreement is breached and take all legal steps to enforce the Agreement[.]" *Id.* In the event Plaintiff "must take legal steps necessary to . . . recoup the amounts owed," Defendants "must pay all of Donna Italia's fees and expenses, including its attorneys' fees[.]" *Id.* In addition to the attorneys' fees and expenses, Defendants do not contest that damages in the event of a breach include pre- and post-judgment interest. *See* Opp. Defendants do not dispute the principal amount owed, $108,750, nor do they dispute that no payment has yet been made. *Id.*; Pl.'s 56.1 ¶ 12; Agr. ¶ 2.

### 1. Mr. Shafir's Personal Guarantee

The Agreement is also backed by a personal guarantee for payment from Mr. Shafir, and both Mr. Shafir and Smart Soda are parties to the Agreement. This Personal Guarantee is coextensive with the full amount of damages in the event of breach. Agr. ¶ 5(c). Defendants' payment obligation "is joint and several and Shafir may not rely on any negative financial position, lack of cash flow, or bankruptcy of Smart Soda to contend that he is not personally

responsible for paying the aforementioned costs and expenses, including attorneys' fees, of Donna Italia." *Id*. ¶ 5(b).[2]

### 2. Modification and Waiver Provisions in the Agreement

The Agreement contains two primary provisions relating to modification and waiver. Section 5(b) reads, in relevant part: "[S]hould [Defendants] notify Donna Italia in writing of the need to reasonably modify the timing of any installment payment and Donna Italia agrees to the same, that alone shall not constitute any breach of this Agreement." *Id*. ¶ 5(b). Section 11 reads, in relevant part: "This Agreement may be amended, supplemented, or otherwise modified only by a written instrument executed by each Party hereto." *Id*. ¶ 11. Section 11 continues, "[n]o waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and executed by the Party so waiving . . . no action taken pursuant to this Agreement shall be deemed to constitute a waiver . . . ." *Id*.

### C. Failure to Pay and Subsequent Communication

On July 20, 2024, just four days after the Parties entered into the Agreement, the first installment of Defendants' payment obligation became due. Pl.'s 56.1 ¶ 19; Defs.' 56.1 ¶ 19; Agr. ¶ 2. It is undisputed that Defendants did not pay the first installment on this date. Pl.'s 56.1 ¶ 20; Defs.' 56.1 ¶ 20. Furthermore, when the payment became due, Defendants did not contact Donna Italia to explain the delay or to request that the installment payment due date be modified or extended.[3] Pl.'s 56.1 ¶ 20.

---

[2] Defendants admit this fact but maintain—without providing further factual support beyond Mr. Shafir's assertion that he didn't have the cashflow to make the payments—that the Guarantee was a "contract of adhesion that Mr. Shafir was coerced into executing." Defs.' 56.1 ¶ 17.

[3] Defendants deny these facts but provide no alternative account of events on July 20, 2024, simply stating that they "requested payment instructions on July 23, 2024, indicating an intent to pay and seeking clarity on execution." Defs.' 56.1 ¶ 20.

On July 23, 2024, Mr. Shafir emailed Donna Italia's CFO, asking that he "share the wiring instructions" with Smart Soda's office manager, Jane Tsirulnik, who was also copied on the email. Dkt. No. 50 ¶ 11. Later that day, Ms. Tsirulnik sent an email to Donna Italia stating that "payment confirmation" was attached; however, the document Donna Italia received was not a payment confirmation for a wire transfer. Pl.'s 56.1 ¶ 21. Instead, attached to Ms. Tsirulnik's email was a proposed "Standard ACH" payment, to be delivered six days later, and still "pending review" by Smart Soda's bank. *Id*. The first installment payment was never made. *Id*. ¶ 22.

On August 15, 2024, the second installment payment required by the Agreement became due. *Id*. ¶ 23. Again, Defendants did not make a payment in any amount, nor did Defendants write to Plaintiff or Plaintiff's counsel asking for an extension or modification of the payment terms. To date, none of the four required installment payments under the Agreement have been paid. *Id*. ¶ 26.

## II.    PROCEDURAL HISTORY

Plaintiff filed this action on September 6, 2024. The Complaint asserts three causes of action: (1) breach of contract and, in the alternative, (2) breach of covenant of good faith and fair dealing; and (3) unjust enrichment. Compl. ¶¶ 39–62. Defendants filed their answer on November 13, 2025. Dkt. No. 27. After settlement efforts failed, Plaintiff moved for summary judgment on July 11, 2025. Dkt. No. 52. The motion is now fully briefed and before the Court for decision.

## DISCUSSION

## I.    LEGAL STANDARD ON SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[4]  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).  "When parties cross-move for summary judgment, each motion is analyzed separately, in each case construing the evidence in the light most favorable to the non-moving party." *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025).

## II.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIM

Plaintiff alleges that Defendants breached their contract with Plaintiff by failing to pay the installments due under the Agreement.  As an initial matter, a settlement agreement is a contract and is therefore construed and analyzed under general principles of contract law. *Murphy v. Inst. of Int'l Educ.*, 32 F.4th 146, 150 (2d Cir. 2022).  Under New York law, the

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

6

elements of a breach of contract claim are: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages. *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 632 F. Supp. 3d 517, 527 (S.D.N.Y. 2022). In order to establish a breach, a plaintiff must allege the specific provisions of the contract upon which liability is predicated. *Id.*

The first two elements are satisfied because Defendants and Plaintiff agree that the Agreement is a legally enforceable contract, and that Plaintiff has adequately performed. Reply at 4; Defs' 56.1 ¶ 27. The third element is largely undisputed, subject to the affirmative defensed discussed below, because Defendants do not dispute that they have failed to pay any amount of the installment payments due under the Agreement. Defs' 56.1 ¶¶ 22, 27. *See Queens Ballpark Co., LLC v. Vysk Commc'ns*, 226 F. Supp. 3d 254, 258 (S.D.N.Y. 2016) (holding that a defendant's failure to make the payment required under a settlement agreement constitutes a material breach of the agreement). Finally, in the event of a breach, damages are clear on the face of the Agreement itself, and are undisputed: the outstanding principal amount of $108,750.00, attorney's fees and expenses necessary to pursue legal action to enforce the Agreement, and pre- and post-judgment interest in a prescribed amount. Agr. ¶¶ 2, 5(b).

Defendants acknowledge that they did not make any of the installment payments under the Agreement, but nonetheless argue that they have several affirmative defenses to its breach — quasi-impossibility, modification, and waiver—which can withstand summary judgment. Opp. at 1–2. The Court addresses each contention in turn.

### A. Defendants Cannot Establish an Impossibility Defense

Defendants contend that their inability to pay the first installment payment on the due date was the result of Plaintiff's failure to provide wiring instructions. *Id.* at 1. Accordingly, Defendants argue that they should be excused from default as of July 20, 2024, because they

were not provided with sufficient information to perform their payment under the contract. *Id.* At best, Defendants appear to raise an impossibility defense, but that defense plainly does not apply to the undisputed facts of this case. "Impossibility excuses a party's performance only when (1) the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible and (2) the impossibility was produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *CAI Rail, Inc. v. Badger Mining Corp.*, No. 20-CV-04644 (JPC), 2021 WL 705880, at *7 (S.D.N.Y. Feb. 22, 2021) (quoting *Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902 (1987)).

An impossibility defense cannot save Defendants from summary judgment on Plaintiff's breach of contract claim because Defendants' performance under the Agreement was not rendered "objectively impossible." *CAI Rail, Inc.*, 2021 WL 705880, at *7. The defense fails as both a factual and a legal matter. Factually, although Defendants allege that they did not have the wiring instructions until July 23, 2024, the instructions were included on the face of the agreement: the Agreement provides that payment shall be made by wire and identifies the applicable bank, account number, and routing number for Donna Italia. Agr. ¶ 2; Reply at 5. Defendants do not contest these facts. Defs' 56.1 ¶ 14. Accordingly, it was entirely possible for Defendants to wire their payment on the date it was due because they had access to the wiring instructions at the time of the breach. The defense likewise fails as a legal matter, even if Defendants' factual position had merit. Impossibility may supply a defense to breach when a party is faced with an unanticipated event that materially interferes with performance of the contracted duty. *See e.g. Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 29 (2d Cir. 2018) (Hurricane Sandy destroyed inventory); *CAI Rail, Inc.*, 2021 WL 705880 (COVID-19

upended typical business operations for a mining company).  Here, there was no such external disruptor.

At best, Defendants' argument is about fixing the proper date for their undisputed breach. Defendants concede that—at the latest—they had payment instructions on July 23, 2024, three days after the July 20, 2024, payment deadline.  Opp. at 1.  Accordingly, even if the delayed instructions would have explained non-payment between July 20, 2024, and July 23, 2024, Defendants offer no legally cognizable excuse as to why these events have prevented them from paying any part of the outstanding loan balance as of July 23, 2024.  In addition, because the Agreement specified that any installment payment received within seven days of the date fixed for payment would be deemed timely, Agr. ¶ 5(b), the appropriate date for a clear breach would be July 27, 2024, several days after Defendants concede they had the necessary payment instructions.

### B.  Defendants Cannot Establish a Waiver Defense

Defendants next contend that Plaintiff waived their right to payment under the Agreement by failing to "reject the request or respond with a refusal to adjust the deadline" when Defendants, specifically Ms. Tsirulnik, "emailed Plaintiff to request wiring instructions" on July 23, 2024.  Opp. at 2.  Put differently, Defendants argue that their email about the wiring instructions should be viewed as an attempt to adjust the payment deadline, and that Plaintiff's failure to object to Defendants' communication thus "supports a finding that Plaintiff waived strict enforcement of the [payment's] due date" as specified in the Agreement.  *Id.*

Under New York law, waiver is "an intentional abandonment or relinquishment of known right or advantage which, but for such waiver, party would have enjoyed."  *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991).  Contract terms "may be waived by implication or express intention of the party for whose benefit the provision inures."

*Id*.  Because the waiving party is giving up a contracted for right, the waiver must be "unmistakably manifested" and not simply inferred from "a doubtful or equivocal act." *Orange Steel Erectors, Inc. v. Newburgh Steel Prods., Inc.*, 640 N.Y.S.2d 283, 285 (App. Div. 3d Dep't 1996).  The standard for evaluating a party's manifestation is high: "[A] waiver may be established as a matter of law by the express declaration of a party or in situations where the party's undisputed acts or language are so inconsistent with his purpose to stand upon his rights as to leave no opportunity for reasonable inference to the contrary." *NetTech Sols., L.L.C. v. ZipPark.com*, No. 01-CV-02683 (SAS), 2001 WL 1111966, at *6 (S.D.N.Y. Sept. 20, 2001).

Defendants claim that the email from Ms. Tsirulnik, sent three days after the payment due date, to "request wiring instructions" may have "constituted . . . a waiver of the original payment." Opp. at 2.  As evidence of waiver, Defendants point to Plaintiff's failure to affirmatively "reject the request or respond with a refusal." *Id*.; Dkt. No. 58 ¶ 12.  This argument fails both legally and factually.

"Waiver cannot be created by negligence, oversight, or thoughtlessness; instead, it must be proved that a party intentionally or voluntarily waived a contractual right or advantage." *J & J Sports Prods., Inc. v. Patin*, 358 F. Supp. 3d 318, 323 (S.D.N.Y. 2019).  Crucially, it may not be inferred from "mere silence or inaction". *Id*.  Here, Defendant is alleging that Plaintiff waived via omission.  Generally, a failure to act does not manifest an intent to waive sufficient to meet the legal standard for waiver. *See e.g. id*.; *Wyeth v. King Pharms., Inc.*, 396 F. Supp. 2d 280, 290 (E.D.N.Y. 2005).  But Plaintiff did not fail to act to enforce their right to payment.  To the contrary, Defendants concede that they had the payment instructions and understood their obligation to pay by no later than July 23, 2024 (even though those instructions were already contained in the Agreement).

Further, the Agreement's explicit non-waiver clause also precludes a finding of waiver. Agr. ¶ 11.  *See Telit Wireless Sols., Inc. v. Axesstel, Inc.*, No. 15-CV-5278 (KBF), 2016 WL 1587246, at *6 (S.D.N.Y. Apr. 18, 2016).  The clause reads, in relevant part: "No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and executed by the Party so waiving . . . no action taken pursuant to this Agreement shall be deemed to constitute a waiver . . . ."  Agr. ¶ 11.  Based on the July 2024 emails, no reasonable factfinder could conclude that Plaintiff "explicitly set forth in writing" a waiver of its right to payment under the Agreement.  Based on the undisputed facts (including the text of the Agreement itself), Defendants have not successfully raised a waiver defense under New York law.

## C. Defendants Cannot Establish a Modification Defense

Finally, Defendants contend that Plaintiff modified the "original payment terms" of the Agreement by failing to respond to Defendants when Defendants requested wiring instructions. Opp. at 2.  Specifically, Defendants claim that the July 23 email from Ms. Tsirulnik to "request wiring instructions . . . must be read as a request to modify the payment timeline," *id*., and Plaintiff's failure to "reject the request or respond with a refusal to adjust the deadline" creates a question of fact as to "[w]hether this exchange constituted a modification . . . of the original payment terms."  *Id*.

Under New York law, parties may modify a contract "by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel."  *CT Chems. (U.S.A.) Inc. v. Vinmar Impex, Inc.*, 613 N.E.2d 159, 162 (N.Y. 1993).  To establish contract modification via another agreement, a court must find in the new agreement "proof of each element requisite to the formulation of a contract."  *Breathe LLC v. White Fox Ventures, Inc.*, 268 F. Supp. 3d 510, 514 (S.D.N.Y. 2017) (quoting *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003)).  "To form a binding contract there must be a meeting of the minds, such that there is a

11

manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Adore Me, Inc. v. NPC Glob. Corp.*, No.18-CV-4498 (DLC), 2019 WL 3406545, at \*7 (S.D.N.Y. July 29, 2019) (quoting *Stonehill Capital Mgt. LLC v. Bank of the West*, 28 N.Y.3d 439, 448 (2016)).  Generally, to determine whether there was an objective meeting of the minds sufficient to form a binding and enforceable contract, courts look to "the basic elements of the offer and the acceptance." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019).

On July 23, 2024, Defendants emailed Donna Italia to "request wiring instructions," Opp. at 2, and Ms. Tsirulnik later attached a confirmation of a "Standard ACH" payment to be delivered six days later, "under review" by Defendants' bank, Defs.' 56.1 ¶ 21.  Defendants contend that a modification to the Agreement's payment terms arose from this email, coupled with Plaintiff's failure to "reject the request or respond with a refusal." Opp. at 2.  Even when viewed in a light most favorable to Defendants, this exchange clearly does not evidence that the "parties are truly in agreement with respect to all material terms." *Adore Me, Inc.*, 2019 WL 3406545 at \*7.  There is no evidence <u>at all</u> that a separate, subsequent agreement was formed between Plaintiff and Defendants, and thus modification "by another agreement" is not satisfied. *CT Chems.*, 613 N.E.2d at 162.

In the absence of a new writing, a contract may also be modified by parties' course of performance. *See id.* at 162.  However, Plaintiff exhibited no behavior inconsistent with the Agreement, and therefore cannot be said to have modified the contract. *See e.g. Dallas Aero., Inc.,* 352 F.3d at 783–84 (holding that even an "act of accepting payment is not a course of performance sufficient to demonstrate mutual assent."); *cf. CT Chems.*, 613 N.E.2d at 162 (holding that a party's failure to object on repeated occasions for course of performance may

indicate an intent to modify a contract).  In fact, far from assenting to Defendants' non-payment, Plaintiff filed the Complaint less than a month after Defendants had failed to make the second installment payment.  Defendants identify no evidence at all that can show through a course of performance that Plaintiff agreed to forego their right to payment under the Agreement.  Again, at best, Defendants might be entitled to a finding that Plaintiff did not view the July 23, 2024 failed payment as "untimely," had it been successful—but this is of no moment because, as noted, the Agreement itself deemed any payment made within seven days of the due date as "timely."  Agr. ¶ 5(b).

Finally, the modification provisions contained in the Agreement do not apply.  The Agreement includes two clauses referencing modification.  *Id*. ¶¶ 5(b), 11.  The first of these clauses reads, in relevant part: "[S]hould [Defendants] notify Donna Italia in writing of the need to reasonably modify the timing of any installment payment and Donna Italia agrees to the same, that alone shall not constitute any breach of this Agreement."  *Id*. ¶ 5(b).  The second states, in relevant part, that "[t]his Agreement may be amended, supplemented, or otherwise modified only by a written instrument executed by each Party hereto." *Id*. ¶ 11.  Under New York law, where a contract precludes modification absent a writing signed by both parties, a subsequent writing that purports to modify it but that is devoid of both signatures is unenforceable.  *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 502–03 (S.D.N.Y. 2022).  Given the nature of the July 23, 2024 emails, there is no basis for claiming that these writings modify the original contract.  Accordingly, Defendants have not successfully raised a modification defense.

## III.    REMAINING CLAIMS ARE PLED IN THE ALTERNATIVE AND NEED NOT BE RESOLVED

Plaintiff also brought two other claims, in the alternative if the Court concluded that it had not successfully established the breach of contract claim: breach of the implied covenant of

13

good faith and fair dealing, and unjust enrichment.  Compl. ¶¶ 51–53, 58–61.  Because Plaintiff

has demonstrated that it is entitled to summary judgment on its breach of contract claim based on

the express terms of the Agreement, they are not entitled to judgment on these alternative claims,

and the Court need not reach them at all.

### CONCLUSION

For the reasons stated herein, Plaintiff's motion for summary judgment on its breach of

contract claim is GRANTED, with undisputed damages of $108,750; plus pre-judgment interest

of 9% per annum on each of the four $27,187.50 installment payments (accruing as of July 27,

2024 on the first payment; as of August 15, 2024 on the second payment; as of September 15,

2024 on the third payment; and as of October 15, 2024 on the fourth payment); plus post-

judgment interest under 28 U.S.C. § 1961; plus reasonable attorneys' fees and expenses to

pursue repayment following the breach, in an amount to be determined.[5]  The Clerk of Court is

respectfully directed to enter judgment for Plaintiff and CLOSE this case.  Plaintiff shall submit

a specific request for attorneys' fees and expenses, with supporting documentation, to the Court

within 30 days of the date of this Opinion.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 48 & 49.

Dated: March 31, 2026
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge

---

[5] Plaintiff also moved to seal portions of the briefing on summary judgment to redact confidential settlement terms, without objection from Defendants.  Dkt. No. 48.  For the reasons underlying the Court's prior sealing order, *see* Dkt. No. 3, 24-mc-405 (MMG), the motion is GRANTED.

14